[No. 7338. Decided March 13, 1909.]

## ELLA A. SULLIVAN, *Respondent*, v. DANIEL SULLIVAN, *Appellant*.[1]

DIVORCE—GROUNDS—CRUELTY—WHAT CONSTITUTES — EVIDENCE — SUFFICIENCY. Personal violence is not necessary to constitute cruel treatment as a ground for divorce, and the evidence is sufficient to warrant a decree where it appears that the husband for seven years refused to speak to his wife or children except when absolutely necessary, made unjust charges of improper conduct, insulted and humiliated her guests, and made himself so disagreeable that the wife's life was rendered miserable and the legitimate ends and objects of matrimony had ceased to exist.

SAME—PERSONAL INDIGNITIES—EVIDENCE—SUFFICIENCY. The statutory ground of "personal indignities rendering life burdensome" authorizes a divorce, although the conduct does not fall within the accepted definition of cruel treatment.

SAME—DIVISION OF PROPERTY—SEPARATE AND COMMUNITY PROPERTY. In granting a divorce and dividing property which the parties have been accumulating for twenty-five years, its origin and the amount of rents and profits of separate estate during that time is immaterial, where a fair division is made.

SAME—ATTORNEY'S FEES—ALLOWANCES—APPEAL—HARMLESS ERROR. The allowance of an attorney's fee of $2,500 in a divorce case where $200,000 worth of property was divided, is not excessive and is without prejudice where the court would doubtless have increased plaintiff's allowance had the attorney's fee not been granted; and although under Bal. Code, § 5165, attorney's fees are to be left to private contract, where the parties have the means to employ them.

COSTS—ON APPEAL—RENTS PENDING APPEAL. Where pending appeal a decree of divorce dividing the property is superseded, the rents and profits pending the appeal will, on affirmance, be offset against allowances made to the respondent, in view of which interest and costs may be disallowed by the supreme court on prompt payment of the judgment by appellant.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered March 18, 1908, upon findings in favor of the plaintiff, in an action for a divorce, after a trial before the court without a jury. Affirmed.

*Million, Houser & Shrauger*, for appellant.

*Smith & Brawley*, for respondent.

[1]Reported in 100 Pac. 321.

RUDKIN, C. J.—This was an action for divorce, on the ground of cruel treatment and personal indignities rendering life burdensome.   On the question of cruel treatment and personal indignities, the court made the following findings:

"That the said defendant is possessed of a sullen and at times ungovernable temper and has at different times and occasions ill-treated and abused plaintiff by calling her vile and abusive names, swearing and cursing at her and said children and applying to each of them vile epithets, and thereafter and for days and weeks at a time the defendant would go about his home in this sullen manner without ever speaking to the plaintiff or any member of his family, and that as time went on the defendant became worse in his manner and that for more than eight or nine years last past it has been only on rare occasions that he ever spoke to the said plaintiff, but that during all times he has not treated plaintiff as a husband should treat his wife.

"That during the fall of 1901 while the said plaintiff and defendant were living together as husband and wife, at their home near the town of Edison, the said defendant became enraged at plaintiff and said to her that she would soon be conducting a house of prostitution, and that there was no cause or provocation for such an accusation, and that since said time and by reason of the acts and misconduct of the defendant, the plaintiff and defendant have not lived or cohabited together as husband and wife.

"That on or about the —— day of ————, 1906, the said infant daughter of plaintiff and defendant was sick and it became necessary under the advice of a physician to take her to the state of California, and plaintiff did take said daughter to said state and on her returning to her home on the evening of June 27th of said year she found all the doors bolted, and upon knocking at the door the defendant opened the door, and when he discovered that it was the plaintiff he shut the door in her face.

"That on several occasions in the last seven years last past the defendant has ordered the plaintiff to leave his premises and never to return.

"That on or about the 2nd day of February, 1907, the said defendant, without any cause or provocation whatsoever,

commenced to swear at, curse and abuse the plaintiff by calling her vile and abusive names and applying to her the term of whelp, and did at said time direct plaintiff to quit and leave his premises.

"That during all the said married life the plaintiff has been a hard working woman, a true and loving wife and has attempted in every way to get along with the said defendant, but that the said defendant has from time to time illtreated and abused her as aforesaid and has failed to practically recognize her as his wife, and has so humiliated and ill-treated her that he has rendered her life miserable and the court finds it is not possible for said parties to live together as husband and wife.

"The court further finds that by reason of the ill treatment of plaintiff by defendant that she has lost all love and affection for him and that defendant by reason of his disposition, cruel and inhuman treatment of plaintiff has no love or affection whatsoever for the said plaintiff."

The court further found that the community property of the parties was of the value of $204,000, and that the defendant was possessed of separate property of the value of $20,000. On these and other formal findings, a divorce was granted, the plaintiff was awarded the care and custody of a minor daughter, and money and property of the aggregate value of $92,500, together with an attorney fee of $2,500. The residue of the property, of the aggregate value of $129,000, was awarded to the defendant. From this decree the defendant has appealed, and assigns as error the granting of the divorce, the disposition made of the property and property rights of the parties, and the allowance of the attorney fee.

The appellant has been an industrious, thrifty, hardworking man all his life, as is shown by his property accumulations. He was never of a very amiable disposition, and, as is usually the case, he grew more irritable and disagreeable as he grew older. The main difficulty between the husband and wife originated some ten years ago over the control and management of their children, consisting of four daughters.

They disagreed entirely as to the manner in which the children should be brought up, how they should dress, what they should do, and when and where they should go, and with whom. Their relations became so strained some seven years ago that they ceased to cohabit as husband and wife, and since that time have been united in name only. During all these years the appellant has never spoken to his wife or children, unless his necessities compelled him to do so. He made himself so disagreeable about the house that his wife and daughters could have neither company nor callers without having them subjected to humiliation and insult. The respondent would not leave her home for years at a time, and we think the record amply bears her out in the assertion that the place was more like a jail than a home. The appellant himself testified that he had neither affection nor respect for his wife and children, and desired to have nothing further to do with her or them. He further testified that in his opinion his wife kept and conducted a disorderly house for ten years last past, and that by a disorderly house he meant a house bordering on prostitution. From this and other testimony in the record, it is very apparent that the legitimate ends and objects of matrimony have long since ceased to exist in this household, and the law should not compel a woman to return to such surroundings. The appellant contends that, in order to constitute cruel treatment, there must be actual personal violence or such conduct on the part of the husband as renders it dangerous or unsafe for the wife to continue to live and cohabit with him. This was no doubt the old rule, but the modern decisions have modified it to some extent. Thus, in *Carpenter v. Carpenter*, 30 Kan. 712, 744, 2 Pac. 122, the court said:

"It was formerly thought that to constitute extreme cruelty, such that authorized the granting of a divorce, physical violence was necessary; but the modern and better considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation, and it is now very generally held that any unjustifiable conduct on the part

of either the husband or wife, which so 'grievously wounds the mental feelings of the other, or such as in any other manner. endangers the life of the other, or so utterly destroys the peace of mind of the other as to seriously impair the bodily health or endanger the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty' under the statutes, although no physical or personal violence may be inflicted, or even threatened."

And numerous cases are cited in support of the rule there announced. Furthermore, the term "personal indignities rendering life burdensome," as used in our statute, includes conduct which does not fall within the accepted definitions of cruel treatment. 14 Cyc. 625. We are therefore of the opinion that the findings and testimony were ample to warrant the dissolution of the marriage contract.

The appellant excepted to the disposition of the property, as made by the trial court, and to its finding as to the extent and value of his separate estate. We think perhaps the court did ignore both the rents and profits arising from the husband's separate estate, and the increase in value of the property itself, in making its findings and conclusions; but aside from the land itself the separate and community property were so commingled that it would be impossible to separate or segregate the two at this time. Furthermore, after a husband and wife have toiled on together for upwards of a quarter of a century in accumulating property, what they may have had to start with is a matter of little concern. The origin of the property is only a circumstance in the case and the ultimate duty of the court is to make a fair and equitable division under all the circumstances. We think that end was substantially attained in the case at bar.

The appellant further contends that the attorney fee allowed is excessive. Bal. Code, § 5165 (P. C. § 1103), provides that,

"The measure and mode of compensation of attorneys and counselors shall be left to the agreement, expressed or im-

plied, of the parties, but there shall be allowed to the prevailing party upon the judgment, certain sums by way of indemnity for his expenses in the action, which allowances are termed costs."

When the parties to a divorce action have ample means to employ their own counsel, or when they are furnished with ample means by the decree of the court, the compensation to be made to their attorneys should be left to the private contract of the parties, and the court should not assume to make contracts for them. In this particular case, however, if the court had not allowed the attorney fee it would doubtless have made the allowance indirectly by increasing the amount of property awarded to the respondent, so that the appellant has not been injured. In view of the nature of the action and the amount of property involved, it cannot be said that the allowance for attorney fees is unreasonable or excessive.

The appellant superseded the judgment of the lower court, and has had the use and occupation of the property awarded to the respondent, with the rents, issues, and profits thereof, pending the appeal. On the other hand, certain allowances have been made to the respondent by this court. *Sullivan v. Sullivan,* 49 Wash. 508, 95 Pac. 1095. The allowances made by this court will be permitted to offset any claim for interest or for rents and profits on the part of the respondent, and the supersedeas bond will be cancelled and held for naught, provided the appellant will surrender forthwith to the respondent the property awarded to her by the decree and pay the amount of the money awarded without interest. Subject to this modification, the judgment is affirmed without costs.

CROW, MOUNT, FULLERTON, and DUNBAR, JJ., concur.
CHADWICK and GOSE, JJ., took no part.